

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 4:25-CR-227-P |
| WILLIAM THOMAS ENGLE, JR. (01) a/k/a "Tom Engle" | |

## FACTUAL RESUME

In support of William Thomas Engle, Jr.'s, a/k/a Tom Engle, plea of guilty to the offense in Count One of the second superseding indictment, Engle, the defendant; Pia Lederman and Joshua Rhodes, the defendant's attorneys; and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the second superseding indictment, charging a violation of 18 U.S.C. § 1343, that is, wire fraud, the government must prove each of the following elements beyond a reasonable doubt:[1]

First: That the defendant knowingly devised or intended to devise any scheme to defraud, that is a scheme to defraud loan applicants and investors in order to induce loan applicants to fund good faith accounts that were purportedly used to secure loans from BCFI, or to induce investors to invest in good faith accounts related to BCFI loans;

Second: That the scheme to defraud employed false material representations,

---

[1] Fifth Circuit Pattern Jury Instruction 2.57 (5th Cir. 2024).

Factual Resume—Page 1

                false material pretenses or false material promises;

Third:       That the defendant transmitted or caused to be transmitted by way of wire communications, in interstate or foreign commerce, any writing, signal, or sound for the purpose of executing such scheme; and

Fourth:     That the defendant acted with a specific intent to defraud.

## STIPULATED FACTS

1. William Thomas Engle, Jr., a/k/a Tom Engle, admits and agrees that beginning in or about June 2020, and continuing until in or about at least January 2022, within the Northern District of Texas, Fort Worth Division, and elsewhere, he knowingly devised or intended to devise any scheme and artifice to defraud loan applicants and investors, and to obtain money by means of materially false or fraudulent pretenses, representations, or promises.

2. Williams Thomas Engle, Jr., a/k/a Tom Engle, admits and agrees that on or about September 11, 2020, together with others known and unknown, for the purpose of executing or attempting to execute the scheme or artifice to defraud, or to obtain money or property by means of materially false or fraudulent pretenses, representations, or promises, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signals, signs or pictures, in that the victim, to wit: Victim 1, initiated a withdrawal of funds, resulting in an interstate wire transfer as follows:

| COUNT | DATE[2] | INTERSTATE WIRE |
|---|---|---|
| 1 | September 11, 2020 | Wire transfer in the amount of $2,499,980 from Victim 1's CIBC bank account ending in 6416 in Toronto, Ontario, Canada to a Fidelity account ending in 5979 in Southlake, Texas, which was controlled by **Engle**. |

3.   **Engle** stipulates, admits, and agrees that all facts and information in the charging Second Superseding Indictment paragraphs 1-38 are hereby incorporated by reference.

4.   Beginning in or about June 2020, and continuing until in or about at least January 2022, **William Thomas Engle, Jr.**, a.k.a. Tom Engle, along with others known and unknown, defrauded victims out of millions of dollars.

5.   Specifically, **Engle** worked with Christopher Reinhard Brown and his company, Brown Capital Funding International ("BCFI"). BCFI promised high-dollar loans to victims but required victims to establish bank accounts with a percentage of the loan amount as a show of good faith.

6.   **Engle** told victims he would work with them to secure loans from BCFI. Specifically, **Engle** told victims that if they did not have enough funds to establish a Good Faith Account, **Engle** could provide the funds so long as victims provided a percentage. **Engle** promised the victims he would hold their funds in a secure account and refund it to them if the loans did not fund.

---

[2] Dates are approximate.

7. However, while victims provided **Engle** with funds, **Engle** never funded Good Faith Accounts, and victims never received their loans. **Engle** never returned the funds to victims.

## Parties

8. At all times relevant to the scheme **William Thomas Engle, Jr.**, a.k.a. Tom Engle, ("**Engle**") was a resident of Southlake, Texas.

9. At all times relevant to the scheme Christopher Reinhard Brown ("Brown") was a resident of Atlanta, Georgia.

10. Nottingham Ventures, LLC ("NV") was a company established, owned, and controlled by **Engle** for the purpose of furthering the fraudulent scheme described below.

11. Brown Capital Funding International ("BCFI") was a company established, owned, and controlled by Brown, and was registered in the state of Georgia, purporting to be a "leading private equity firm." In reality, BCFI was a sham company set up for the purpose of furthering the fraudulent scheme described below.

12. Victim 1, Victim 2, and Victim 3 were customers of BCFI.

Scheme to Defraud

10. Beginning in or about June 2020, and continuing until in or about at least January 2022, in the Fort Worth Division of the Northern District of Texas and elsewhere, defendant **William Thomas Engle, Jr.**, a.k.a. Tom Engle, along with Christopher Reinhard Brown, together with others known and unknown, knowingly and willfully devised a scheme to defraud loan applicants and investors.

11. Brown owned and operated BCFI. According to BCFI's website, BCFI was a private equity firm that purported to provide 100% funding of loans with no maximum loan amount and a minimum loan amount of $40 million.

12. BCFI required that loan applicants put 25% of the requested loan amount into a "Good Faith Account," ("GFA") prior to them funding the loan.

13. **Engle** worked with Brown and BCFI as a broker. As a broker, **Engle** purported to establish the GFA accounts and work with loan applicants to fund the 25% payment into the GFAs.

14. If a loan applicant could not afford 25%, **Engle** would assist the loan applicant in obtaining the necessary funds.

*Loan Victims*

15. **Engle** defrauded victims, including Victim 1, Victim 2, and Victim 3 (the "Loan Victims"), by promising them loans through BCFI, collecting GFA funds in order to secure the loans, and never providing the loans while keeping the GFA funds for themselves and others.

16. **Engle** told the Loan Victims that BCFI would provide them loans but that they would need to deposit at least 25% of their sought after loan amounts into a GFA.

17. **Engle** represented to the Loan Victims that GFAs were a far less risky option than the traditional means of providing collateral or a down payment on a loan because the funds were not owned by a bank and could be withdrawn at any time.

18. **Engle** further represented that BCFI would not have access to the funds in the GFA other than to verify that a legitimate account was established.

19. **Engle** further represented to the Loan Victims that once BCFI verified the funds in the GFA, BCFI would immediately fund the loans.

20. **Engle**, through his business NV, entered into contracts (e.g., "Consulting Agreements," and "Operating Agreements") with Loan Victims regarding their loans and the GFAs.

21. Based upon these fraudulent representations and promises, the Loan Victims, at the direction of **Engle**, wired a total of approximately $3 million into accounts owned and controlled by **Engle**, with the understanding that the money would be used to fund their GFAs.

22. Despite the Loan Victims sending their money to **Engle**, **Engle** never established the GFAs.

*Investor Victims*

23. **Engle** and Brown also defrauded investors (the "Investor Victims") by falsely promising returns on investment to investors who contributed to a BCFI loan applicant's GFA.

24. Specifically, **Engle** solicited Investor Victims to send funds to **Engle** for the purported purpose of funding GFAs for loan applicants when, for example, a loan applicant did not have the required 25% of the loan amount.

25. **Engle**, through his business NV, entered into Buy-Sell Agreements that promised that Investor Victims would receive 125% of their initial contribution if the loan "funded." The Buy-Sell Agreements also promised that if the loan failed to fund, Investor Victims would receive their "initial contributions plus interest at the rate of 15% per annum."

26. Additionally, **Engle** falsely represented that he would contribute a large portion of his own funds into a GFA account should the Investor Victims contribute their own portion. In reality, **Engle** did not have the ability to contribute large sums of money into a GFA account.

27. **Engle** also represented to Investor Victims that their funds would go straight into a bank account where it would safely remain until BCFI funded the loan.

28. Based upon these fraudulent representations and promises, the Investor Victims, at the direction of **Engle**, wired approximately $5 million to accounts owned and controlled by **Engle**.

*Use of funds*

29. Despite the representations made to the Loan Victims and Investor Victims, **Engle** never transferred the victims' funds from his accounts to single purpose, secure GFAs.

30. Instead, **Engle** used the victims' funds to purchase personal luxury items, such as a yacht, vehicles, and jewelry.

31. Despite representations made to the victims that their money would be safe, none of the money was ever returned to the victims.

*Concealing the Scheme*

32. In order to conceal the scheme, **Engle** emailed the Loan Victims and Investor Victims fraudulent bank statements purporting to show that the victims' funds were being stored in a secure account.

33. **Engle** and Brown also provided false excuses to the victims via email as to why BCFI never funded the loans. In some instances, **Engle** directed Brown as to what to say to the victims. **Engle** sent Brown text messages with a false excuse written as if to appear it came from Brown. **Engle** instructed Brown to send the false excuse to the victims. Brown then rewrote verbatim text messages from **Engle**, sent them via email from Brown's email account to make it appear as if Brown composed them.

34. **Engle** urged the victims via email to leave their money in their GFAs while knowing that the GFAs did not exist and that he had already spent their money.

35. As a result of the scheme, victims lost approximately $8.275 million.

36. The defendant agrees that the defendant committed all the essential elements of the offense in Count One of the Second Superseding Indictment. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to

demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the second superseding indictment.

AGREED TO AND STIPULATED on this 6th day of January, 2026.

RYAN RAYBOULD
UNITED STATES ATTORNEY

_____
WILLIAM THOMAS ENGLE, JR.
a/k/a Tom Engle
Defendant

_____
PIA LEDERMAN
JOSHUA RHODES
Attorneys for Defendant

_____
BRANDIE WADE
Assistant United States Attorney
Texas State Bar No. 24058350
1100 Commerce Street, Third Floor
Dallas, Texas
Tel: 214-659-8600
Fax: 214-659-8805
Email: brandie.wade@usdoj.gov